



## MEMORANDUM OPINION

No. 04-09-00458-CR

America Elizabeth **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CRN-000543-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  April 13, 2011

AFFIRMED

A jury found appellant America Elizabeth Martinez guilty of murder, and she was sentenced to forty years confinement in the Texas Department of Criminal Justice–Institutional Division.  On appeal, Martinez argues the trial court erred by: (1) denying her motion for new trial; (2) denying her motion for instructed verdict; (3) denying her motion to quash the indictment; (4) admitting out-of-court statements of a child witness; and (5) denying her request for a self-defense jury instruction.  We affirm the trial court's judgment.

## BACKGROUND

Martinez and Alfredo Torres had a common-law marriage. The record shows that on the evening of June 2, 2008, Martinez, Torres, and three other individuals, Emmanuel Munoz, Jorge Rivas, and Adriana Martinez, were drinking alcohol and using cocaine at Martinez's apartment. Over the course of the evening, an argument ensued between Martinez and Torres, which ended in Martinez stabbing Torres in the chest, causing his death.

Officer Samuel Reyes of the Laredo Police Department was dispatched to Martinez's apartment to investigate an overdose call. When he arrived, Officer Reyes discovered Torres had a stab wound. At trial, Officer Reyes testified Martinez told him she got into an argument with Torres. Martinez said Torres went outside after their argument, and she later found him lying dead outside.

Efrain Torres, Torres's nephew, was upstairs at a friend's apartment the night of the incident. At trial, Efrain testified one of his friends told him there was a man covered in blood downstairs. He then discovered Torres's body lying on the ground outside of Martinez's apartment. Efrain stated he saw Martinez using a garden hose to wash off Torres's body. He said he called an ambulance from a neighbor's apartment and then carried Torres's body into Martinez's apartment. Efrain also mentioned that Martinez tried to flee the scene, but a friend of his blocked her truck so she could not leave.

Jorge Rivas and Emmanuel Munoz, two of the individuals present at Martinez's apartment the night of the incident, testified Martinez and Torres began arguing about their daughter. Munoz testified he saw Martinez pick up a small knife from the kitchen table and threaten Torres with it. Martinez and Torres followed Rivas and Munoz outside the apartment as

they were leaving. As they drove away, Rivas and Munoz testified they saw Martinez lunging towards Torres, making him fall backwards.

Martinez was arrested and charged with murder. She was taken to the Laredo Police Department. Detective Greg Cantu and Detective Primo Guzman interviewed Martinez. At trial, Detective Cantu testified that at the scene, Martinez mentioned she argued with Torres, who left the apartment, and she found him dead about twenty minutes later. Martinez told Detective Cantu she thought Torres had overdosed. Detective Cantu also testified he spoke to Martinez's eight-year old son, Arath De Anda. De Anda told him he heard Torres scream, and that Martinez ran inside the apartment soon thereafter. Detective Cantu subsequently learned De Anda had been taken to Mexico by his biological father.

Detective Guzman testified Martinez admitted stabbing Torres. Martinez admitted placing a knife against his chest, but claimed Torres flung himself onto the knife. The police were unable to find the murder weapon, which Martinez described as a pocket-knife. Detective Guzman testified Martinez denied Torres threatened her.

Dr. Corrine E. Stern of the Webb County Medical Examiner's Office conducted Torres's autopsy. She testified Torres died from a stab wound to the left upper anterior chest wall that penetrated to the heart. Dr. Stern testified that based on the depth of the wound penetration, Torres's injury was not likely caused by someone running into a knife.

Based on the foregoing evidence, the jury found Martinez guilty of Torres's murder. Martinez then perfected this appeal.

## MOTION FOR NEW TRIAL

Martinez first contends the court erred in failing to conduct an evidentiary hearing on her motion for new trial and in denying the motion. Martinez argues she is entitled to a new trial

based on newly-discovered evidence that questions the credibility of the medical examiner, and because the court erred in allowing the medical examiner to testify on matters outside the scope of her field of expertise and matters outside of her report. We disagree.

The grant or denial of a motion for new trial is within the discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Therefore, in reviewing the trial court's decision to grant a hearing on a motion for new trial, we use an abuse of discretion standard. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). We reverse a trial court's ruling with regard to a motion for new trial only when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* at 695 n.4.

A defendant is not entitled to a hearing on a motion for new trial unless the motion and supporting affidavits reflect that reasonable grounds exist for granting a new trial. *Espinoza v. State*, 185 S.W.3d 1, 6 (Tex. Crim. App. 2005). Reasonable grounds exist for granting a motion for new trial upon newly-discovered evidence only when the motion meets the requirements of article 40.001 of the Texas Code of Criminal Procedure, which provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). Interpreting this statute, the Texas Court of Criminal Appeals has held that a defendant is entitled to have a motion for new trial granted if:

> (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *see also Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002). A matter is collateral if it seeks only to test a witness's general credibility. *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984).

In her motion for new trial, Martinez alleged she was entitled to a new trial based on newly-discovered evidence, specifically newspaper articles of an Alabama case discussing the death of a baby. The articles questioned the integrity of the autopsy performed by Dr. Stern, the Webb County Medical Examiner who performed Torres's autopsy, and stated that the Alabama autopsy was called into question by the Alabama Department of Forensic Science. We hold the accounts in the newspaper articles seek only to question Dr. Stern's general credibility and are, therefore, merely collateral and impeaching. *See Wallace*, 106 S.W.3d at 108. Accordingly, the trial court did not err in denying the motion for new trial on the basis of newly discovered evidence. *See Keller*, 662 S.W.2d at 365.

Martinez also contends the court erred in denying her motion for new trial for allowing the medical examiner to testify on matters outside the scope of her field of expertise and to matters not covered by her written report. However, Martinez never challenged the medical examiner's qualifications during trial. *See Croft v. State,* 148 S.W.3d 533, 544 (Tex. App.—Houston [14th Dist.] 2004) (noting that failure to object to expert's qualifications waives assertion of error on appeal). Martinez also fails to show that allowing the medical examiner's testimony resulted in a different outcome at trial. Another witness placed the knife in Martinez's hand, and Martinez's own confession tape included her account on how she stabbed Torres.

Accordingly, Martinez has failed to show reasonable grounds for granting a new trial, or show how the outcome of the trial would have changed based on the newly-acquired evidence. We overrule Martinez's first point of error.

## MOTION FOR INSTRUCTED VERDICT

Martinez argues the court erred in denying her motion for instructed verdict because the evidence was insufficient to support her conviction, and there was no evidence Martinez acted with the required intent to cause Torres's death. A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Montgomery v. State*, 198 S.W.3d 67, 84 (Tex. App.—Fort Worth 2006, pet. ref'd). We use the standard set forth in *Jackson v. Virginia* to review a sufficiency claim. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); 443 U.S. 307 (1979). We view the evidence in a light most favorable to the jury's verdict whenever a defendant challenges the sufficiency of the evidence supporting his or her conviction. *Brooks*, 323 S.W.3d at 902. We must defer to the jury's findings and may not reweigh the evidence to set aside the verdict simply because we disagree with it. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (citing *Cain*, 958 S.W.2d at 407). Resolution of conflicts in the evidence is within the exclusive province of the jury, and the jury may choose to believe all, some, or none of the testimony or evidence presented. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

To prove a defendant committed the offense of murder, the State must establish the defendant intentionally or knowingly caused the victim's death, or intended to cause serious bodily injury to the victim and committed an act clearly dangerous to human life that caused the victim's death. TEX. PENAL CODE ANN. § 19.02(b)(1)–(3) (West 2003). Proof of a culpable mental state invariably depends on circumstantial evidence, and the jury may determine the

defendant's mental state from evidence of the defendant's acts, words, or conduct. *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet. ref'd).

At trial, the jury heard the testimony of nine law enforcement officers, including Detective Guzman, who testified that Martinez admitted stabbing Torres. The jury also heard testimony from Jorge Rivas and Emmanuel Martinez, who testified about Martinez's and Torres's argument, the altercation with the knife in the kitchen, and the subsequent attack by Martinez on Torres outside of the apartment. They testified Martinez was the aggressor and Torres backed away from Martinez moments before his death. Another witness, Efrain Torres, testified Martinez "poured" water on the body of the victim and tried to flee the scene, all of which reflect consciousness of guilt. *See Smith v. State*, No. PD-0298-09, 2011 WL 309654, at *17 n.39 (Tex. Crim. App. Feb. 2, 2011) (citing *Cawley v. State*, 166 Tex. Crim. 37, 310 S.W.2d 340, 342 (1957) (noting that evidence of flight is corroborating circumstance indicative of consciousness of guilt)).

The jury also saw Martinez's taped statement, in which she provided different accounts of events, including having found Torres's body on the ground twenty minutes after their argument, before she finally admitted stabbing Torres. Finally, the medical examiner testified the depth of the wound was so deep that it was unlikely Torres ran into the knife, as Martinez claimed.

The jury is the sole judge of the credibility of the witnesses and of the strength of the evidence and may choose to believe or disbelieve any portion of the witnesses' testimony. *Heiselbetz*, 906 S.W.2d at 504; *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Here, it was within the jury's province to believe the law enforcement and lay witnesses' testimonies as well as the rest of the evidence pointing to Martinez's guilt in Torres's murder.

Giving deference to the jury's determination of credibility and weight given to the evidence, we hold the evidence is sufficient to support the jury's verdict. *See Brooks*, 323 S.W.3d at 902. Therefore, the court correctly denied Martinez's motion for instructed verdict, and we overrule her second point of error.

## MOTION TO QUASH INDICTMENT

Martinez next argues the court erred in denying her motion to quash the indictment because the indictment failed to provide Martinez with adequate notice of the crime charged. Specifically, Martinez contends the indictment did not list or describe the weapon used in the murder.

A trial court's decision denying a motion to quash an indictment is reviewed de novo. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Once a motion to quash is timely filed, the indictment must be analyzed to determine whether it states on its face the facts necessary to allege that an offense was committed, to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988) (citing *American Plant Food v. State*, 508 S.W.2d 598, 603 (Tex. Crim. App. 1974)); *Rotenberry v. State*, 245 S.W.3d 583, 586 (Tex. App.—Fort Worth 2007, pet. ref'd). This requirement is codified in article 21.11 of the Texas Code of Criminal Procedure:

> An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.

TEX. CODE CRIM. PRO. ANN. art. 21.11 (West 2009). Additionally, the Texas Constitution requires the notice provided to the accused be clear from a reading of the indictment. TEX.

CONST. art. I, § 10; *Livingston v. State*, 739 S.W.2d 311, 321 (Tex. Crim. App. 1987); *Moore v. State*, 532 S.W.2d 333, 335 (Tex. Crim. App. 1976).

The indictment must be viewed as a whole in order to determine if the offense is sufficiently charged in the indictment. *DeVaughn*, 749 S.W.2d at 67 (citing *Dennis v. State*, 647 S.W.2d 275, 279 (Tex. Crim. App. 1983); *Church v. State*, 552 S.W.2d 138, 140 (Tex. Crim. App. 1977). Additionally, the notice offered by the indictment must be examined in a light most favorable to the accused, keeping in mind his presumption of innocence under the constitution. *DeVaughn*, 749 S.W.2d at 68 (citing *King v. State*, 594 S.W.2d 425, 426 (Tex. Crim. App. 1980)).

The indictment in this case stated, in pertinent part:

> . . . on or about the 3rd day of June, 2008, A.D., and anterior to the presentment of this indictment, in the County and State aforesaid, America Elizabeth Martinez did then and there intentionally or knowingly cause the death of an individual, namely Alfredo Torres, by stabbing Alfredo Torres in the chest.

It is clear from a reading of the indictment that sufficient information is stated to enable Martinez to prepare an adequate defense. *See* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PRO. ANN. art. 21.11; *DeVaughn*, 49 S.W.2d at 67. The indictment provides the date of the offense, the culpable mental state, the statutory elements of the offense, *see* TEX. PENAL CODE ANN. § 19.02(b)(1)–(3) (West 2003), and describes who did what to whom. Martinez claims she did not have proper notice because the indictment did not describe the weapon used to commit the offense. Yet, we find the words in the indictment, "by stabbing Alfredo Torres in the chest," to provide Martinez with sufficient notice to prepare a defense under the constitution, the code of criminal procedure, and interpretive case law. *See id.* We therefore hold that the trial court did not err in denying Martinez's motion to quash, and overrule this point of error.

**ADMISSION OF OUT-OF-COURT STATEMENT**

Martinez next contends that she was not allowed to cross-examine her eight-year-old son, whose statements were presented through a detective at trial, and she was thereby denied the right to face-to-face confrontation as guaranteed by the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). The statements in question were made by Martinez's eight-year-old son to a detective on the night of the murder. The child was taken to Mexico by his biological father the following day. At trial, the detective testified as follows:

> He [defendant's eight-year-old son] said that he woke up. He went to the kitchen to get a glass of water and he heard America Martinez and Alfredo Torres, his parents, outside arguing. And he heard a yell. Somebody screamed out. He said it was his dad that screamed out and saw America run into his house … he said that he ran into his aunt's room and woke her up and told her what was going on, what happened. He also mentioned that he – when he heard that and saw his mom, and he looked outside and saw his dad lying on the ground.

Consistent with the Sixth Amendment's Confrontation Clause guarantee, a testimonial hearsay statement may be admitted in evidence against a defendant "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* Error in admitting evidence in violation of a defendant's right of confrontation is constitutional error that necessitates reversal, unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); *Wood v. State*, 299 S.W.3d 200, 214 (Tex. App.—Austin 2009, pet. filed). When determining specifically whether constitutional error may be declared harmless beyond a reasonable doubt under *Crawford* several factors are relevant. The relevant factors to consider are: 1) what was the importance of the out-of-court statement to the State's case; 2) was the out-of-court statement cumulative of other evidence; 3) did evidence exist corroborating or contradicting the out-of-court statement on

material points; and 4) what was the overall strength of the prosecution's case. *Crawford*, 541 U.S. at 52. The reviewing court must determine the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at the verdict. In other words, did the error adversely affect the integrity of the process leading to the conviction? *Langham*, 305 S.W.3d at 582 (citing *Crawford*, 541 U.S. at 52). After considering the relevant factors and determining whether the testimony was a likely contributing factor in the jury's deliberations, the reviewing court then must determine whether there is a reasonable possibility that the *Crawford* error moved the jury from non-persuasion to persuasion on a particular issue. The reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the conviction before it can affirm it. *Crawford*, 541 U.S. at 52; *Langham*, 305 S.W.3d at 52.

After applying the relevant *Crawford* factors to the complained of testimony, and considering whether the testimony was a likely contributing factor, we hold that even if the admission of the evidence was erroneous under the Sixth Amendment, such error did not move the jury from non-persuasion to persuasion nor did it contribute to the conviction. The detective's testimony about what the child said did not provide evidence that was substantially different from that of other trial witnesses. In addition, the tapes of Martinez's interrogation, which were admitted into evidence, showed Martinez admitted arguing with Torres, holding a knife to his chest, and running into the house after he was stabbed–this evidence is extremely similar to the testimony provided by the detective. This evidence was also corroborated by testimony from Jorge Rivas and Emmanuel Munoz, State's witnesses who were present on the day of the murder.

Accordingly, we hold that even if the admission of the detective's testimony was erroneous, it did not contribute to the conviction. Because we conclude the out-of-court

statement did not contribute to the conviction, we find the admission of evidence harmless. Thus, we overrule Martinez's point of error.

## SELF-DEFENSE JUSTIFICATION

Finally, Martinez argues the court erred in refusing to include a self-defense instruction in the jury charge because the evidence showed Martinez was fearful of Torres. No self-defense jury instruction should be given unless evidence is admitted supporting the defense. *Johnson v. State*, 715 S.W.2d 402, 406 (Tex. Crim. App. 1986).

An individual has the right to use deadly force in self-defense against another "when and to the degree [the actor] reasonably believes the deadly force is immediately necessary to protect [the actor] against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a)(2)(A) (West 2003). In this case, the issue of self-defense was raised in the opening statement of the defense, but not again until the charge conference. Martinez argues evidence presented at trial showed she was fearful of Torres because he was drunk. Yet, a review of the entire record shows no evidence that Martinez ever showed any signs of fearfulness, even in the face of Torres's drunken state.

There is no evidence in the record that Martinez feared for her well-being or that a situation made it "immediately necessary" for her to use deadly force against Torres to protect herself. *See id*. In fact, when questioned by the detectives, Martinez admitted to Detective Guzman that Torres did not threaten her the night of the incident. Martinez also admitted telling Torres to stop screaming because she was going to stab him with a knife. Accordingly, we find no evidence in the record supporting the self-defense claim. *See Jordan v. State*, 782 S.W.2d 524, 527 (Tex. Crim. App. 1989) (noting Texas law allows self-defense charged only when raised by evidence). We overrule Martinez's last point of error.

## CONCLUSION

In sum, we overrule Martinez's points of error and affirm the trial court's judgment.


Marialyn Barnard, Justice


Do Not Publish